UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WENDELL SCOTT, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-04-3573 |
| | § | |
| JOHN POTTER, POSTMASTER GENERAL, | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. #29). Having considered the motion, response, and the applicable law, the Court is of the opinion that Defendant's Motion for Summary Judgment should be GRANTED in part and DENIED in part.

**Factual and Procedural Background**

Plaintiff Wendall B. Scott, a black male of Jamaican origin, began working for the United States Postal Service ("USPS") in 1986 as a letter carrier at the Eastwood Post Office in Houston, TX. *See* Dkt. #34, Ex. D. In 1990, he transferred to the position of Mail Processing Equipment Mechanic in the USPS Houston Processing & Distribution Center. *Id.* Since 1994, he has served as an Electronic Technician ("ET") at this location. *Id.* For a brief period between May and August 2000, Plaintiff held the position of Acting Supervisor of Maintenance Operations. *Id.*

Plaintiff alleges a number of incidents that have contributed to this litigation. Generally, Plaintiff claims that he has "had to endure a continuous, daily, barrage of insults, intimidation, and humiliation." *See* Dkt. #34, Ex. B. More specifically, Plaintiff alleges the following occurrences:

1

1.     On January 9, 2001, Plaintiff alleges Ray Trevino, a Hispanic ET, called him "Vappie Boy," referring to his friendship with Maintenance Manager David Vappie. *Id.*

2.     On February 5, 2001, Plaintiff alleges Trevino said that management was looking for some more Acting Supervisors to fire like Plaintiff (who had been Acting Supervisor for a short period in 2000). *Id.*

3.     On February 28, 2001, Plaintiff alleges Michael DeCamp, a white Acting Supervisor, revealed Plaintiff's private information regarding his sick leave to other employees. *Id.*

4.     On April 5, 2001, Plaintiff alleges Carl Barrett, an African-American ET, yelled at Plaintiff, using the word "boy." *Id.*

5.     On August 6, 2001, Plaintiff alleges Ray Trevino, a Hispanic ET, called Plaintiff a number of names, including "motherfucker" and "nigger." *Id.*

6.     On August 15 and September 20, 2001, Plaintiff alleges Trevino stared at him angrily while was working. *Id.*

7.     On September 15, 2001, Plaintiff alleges Trevino followed him around during work and called him "a lazy mother-fucker who sleeps on the job." *Id.*

8.     On October 8, 2001 Plaintiff alleges Trevino walked behind Plaintiff and stepped on his heels, while other employees watched. *Id.*

9.     On October 14, 2001, Plaintiff alleges that while he was sitting on a stool, DeCamp told him to get up and walk around; however, the next day, while another ET, Henry Lane, a lighter-skinned African-American, was sitting on a stool, DeCamp engaged

2

him in conversation.  *See* Dkt. #34, Ex. A.

10.    On October 16 or 17, 2001, Plaintiff alleges Carl Barrett called Plaintiff "boy" and told Plaintiff that Jamaicans were "no good" *Id.*; Ex. B.

11.    On October 18, 2001, Plaintiff claims he was "singled out" when Supervisor Michael Sprecher, a white male, told him he should talk to his direct supervisor regarding a work-related incident, even though other employees regularly voiced complaints directly to Sprecher.   Plaintiff also alleges Sprecher called him a troublesome "nigger."  *See* Dkt. #34, Ex. A.

Plaintiff filed complaints with his supervisors immediately following each incident.  *Id.*  Plaintiff claims that coping with the above incidents forced him to resort to the Employee Assistance Program.  *Id.*

In November 2001, two positions for Supervisor, Maintenance Operations became open for hiring.  *See* Dkt. #29, Ex. B.  As part of standard practice, a Review Committee was appointed to consider each vacancy.  *Id.*  This committee reviewed the applications, which were primarily from within the organization, and submitted a short list of applicants best qualified for the positions.  *Id.* The Review Committee recommended Michael DeCamp (White), Manuel Nieves (Hispanic), Henry Duplantier (African-American), Larry Hernandez (Hispanic), and Plaintiff, Wendall Scott.  *Id.* These individuals were then interviewed by Cecil Bax, Manager, Maintenance Operations (African-American), who was the selecting official.  *Id.*  Duplantier was selected for a Supervisory position in Beaumont before the interview process and was not interviewed.  *Id.*  Ultimately, in April 2002, DeCamp and Nieves were selected for the two positions.  *Id.*

In his affidavit, Bax maintains that his selections were based on the knowledge, skills, and

abilities of the candidates, and that Plaintiff had less knowledge of relevant maintenance programs and processes than the promoted candidates. *Id.* Bax also claims that a number of employees had complained about Plaintiff's management style during his time as Acting Supervisor. *Id.* However, Plaintiff claims Bax told him during his interview that Alison Cashaw (African-American), Plant Manager, would never promote Plaintiff because of his Equal Employment Opportunity Commission (EEOC) complaints and his letters to her boss. *See* Dkt. #34, Ex. A. Cashaw signed the selections as the appropriate approving official based on Bax's recommendation. *Id.* Plaintiff also notes that he had twelve years of Postal Maintenance experience, while each of the promoted candidates had less than four years experience. *Id.*

In August 2002, Plaintiff filed EEOC Complaint No. 1-G-771-0012-02 with the USPS regarding the above incidents. *Id.* After exhausting his administrative remedies, Plaintiff filed this lawsuit on September 13, 2004, alleging discrimination on the basis of race, national origin, and reprisal for his prior EEO complaints in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII"). *See* Dkt. #1; Dkt. #20. In particular, Plaintiff alleges he was subject to a hostile work environment due to discrimination and that USPS's failure to promote him was both retaliatory in response to his EEOC complaints, and also discriminatory based on his race, national origin, and reprisal activity. *See* Dkt. #20.

Defendant filed its motion seeking summary judgment on all Plaintiff's claims on November 21, 2005 (Dkt. #29). Plaintiff filed a Response in Opposition to the Motion for Summary Judgment on May 2, 2006 (Dkt. #34).

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and

4

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment and no defense to the motion is required. *Id*.

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001); *see also Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## Discussion

### I.    Hostile Work Environment

Defendant seeks summary judgment on Plaintiff's hostile work environment claim. In particular, Defendant argues Plaintiff has failed to establish a *prima facie* case because Plaintiff's allegations do not reflect conduct that is sufficiently frequent or severe to create an abusive work environment. The Court agrees.

In order to establish a *prima facie* case of a hostile work environment under Title VII, Plaintiff must show: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on national origin, gender, or age; (4) the harassment was sufficiently severe to alter the terms and conditions of Plaintiff's employment; and (5) the

6

employer knew or should have known of the harassment in question and failed to take remedial

action.  *Felton v. Polles*, 315 F.3d 470, 484 (5th Cir. 2002); *Ramsey v. Henderson*, 286 F.3d 264,

268 (5th Cir. 2002).  In order to affect a term or condition of employment, race-based harassment

must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment."  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21

(1993).  In determining an "abusive working environment," the Court should look to the totality

of the circumstances, including: "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance."  *Walker v. Thompson,* 214 F.3d

615, 625 (5th Cir. 2000) (quoting *Harris,* 510 U.S. at 23). The Supreme Court has noted that

"mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee"

is not enough to affect the conditions of employment to a sufficiently significant degree to violate

Title VII.  *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). *But see Wallace v. Texas*

*Tech Univ.*, 80 F.3d 1042, 1049 n. 9 (5th Cir. 1996) (suggesting that routinely made racist

remarks might raise a fact issue sufficient to prevent summary judgment).

         Here, Plaintiff claims he dealt with a daily barrage of insults beginning in 2000.

However, the Court cannot rely on this general claim to establish any frequency of

discriminatory conduct, but must instead look to Plaintiff's  specific allegations.  *See Mosley v.*

*Marion County, Miss.*, 111 Fed. Appx. 726, 728 (5th Cir. 2004) (per curiam) (refusing to

consider employee's general allegations of discrimination); *Wallace*, 80 F.3d at 1049 (affirming

that a general allegation of racist remarks was insufficient evidence to establish a *prima facie*

claim for hostile work environment).  Plaintiff identifies several specific examples of alleged

conduct which he maintains establish a hostile work environment.  This Court determines that, of the eleven alleged incidents, only three actually demonstrate language or conduct of other employees that could possibly indicate discrimination based on race or national origin: (1) Trevino calling Plaintiff "nigger" on August 6, 2001; (2) Barrett saying Jamaicans are "no good" on October 16 or 17, 2001; and (3) Sprecher calling Plaintiff a troublesome "nigger" and not hearing his complaint on October 18, 2001.[1]  The remaining eight incidents, as described by Plaintiff, do not contain sufficient evidence of racial animus to support a hostile work environment claim.[2]

Additionally, the totality of the evidence does not suggest a racially discriminatory atmosphere in Plaintiff's workplace.  *See Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 875 (5th Cir. 1999) (looking to the atmosphere of the office in determining a hostile work environment did not exist); *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 596 (5th Cir. 1995) (same).  In fact, the circumstances suggest the opposite.  While not

---

[1]Plaintiff asserts that Defendant's failure to promote him should support his hostile work environment claim. However,  Defendant's failure to promote Plaintiff is more appropriately characterized as an ultimate employment decision, and must serve as a separate, more traditional discrimination claim rather than as evidence of a hostile work environment.  *See Walker*, 214 F.3d at 629 (noting that "hiring, granting leave, discharging, promoting, or compensating" are ultimate employment decisions); *Felton*, 315 F.3d at 485 (refusing to consider ultimate employment decisions for hostile work environment claims where conduct was more appropriately considered in disparate treatment context).

[2] While these eight allegations are potentially offensive, none of these incidents contain any indication of racial animus. Wholly dismissible as without racial animus are: Trevino calling Plaintiff "Vappie Boy;" Trevino talking about Plaintiff being fired as supervisor; DeCamp discussing Plaintiff's personal information; Trevino staring angrily at Plaintiff; Trevino calling Plaintiff lazy; Trevino stepping on Plaintiff's heels; and Decamp making Plaintiff move from his stool. Also, because Plaintiff fails to provide context to Barrett's calling him "boy," and because Barrett is black, that incident does not sufficiently demonstrate racial animus.

dispositive, the Court notes that several of Plaintiff's supervisors are black, including Bax, the Manager of Maintenance, and Cashaw, the plant manager.  Also, Henry Duplantier, the other black applicant for the supervisor position that Plaintiff was denied, received an equivalent position in another office.  Finally, Plaintiff himself held an Acting Supervisor position for a period of four months.  Therefore, the only evidence Plaintiff offers in favor of his hostile work environment claim are the three alleged incidents involving racial slurs.

Although it has indicated that routinely made racist remarks may prevent summary judgment in certain circumstances, the Fifth Circuit affirmed summary judgment where a district court found three incidents involving the use of racial slurs insufficient to establish a Title VII hostile work environment claim. *Mosley*, 111 Fed. Appx. at 728; *see also Fortenberry v. Texas*, 75 Fed. Appx. 924, 928 (5th Cir. 2003) (per curiam) (holding that harassing conduct, including two incidents of racial slurs, were not severe or pervasive enough to establish hostile work environment).  In *Mosley*, the court found that the plaintiff's general allegations of discriminatory behavior could not support his claim.  *Mosley*, 111 Fed. Appx. at 728.  The court then identified eight specific allegations of discrimination.  *Id.*   However, of these eight incidents, only three were found to contain evidence of racial animus.  *Id.*  Without additional support, the court concluded that these three instances were neither severe nor pervasive enough to establish a material fact issue for a hostile work environment claim.  *Id.* at 727-28.

Following the direction of the Fifth Circuit in *Mosley*, this Court disregards Plaintiff's general allegations, and only considers his specific allegations.  After considering the three alleged incidents actually involving racial animus, this Court finds Plaintiff's evidence insufficient to establish a genuine issue of material fact necessary to bring a hostile work

9

environment claim under Title VII. *See Mosley,* 111 Fed. Appx. at 728 (finding summary judgment appropriate where plaintiff fails to support isolated incidents with evidence of further discriminatory conduct or evidence of a discriminatory atmosphere).   Therefore, summary judgment on Plaintiff's hostile work environment claim is appropriate.

## II.     Failure to Promote

Defendant seeks summary judgment on Plaintiff's claim that Defendant discriminated against Plaintiff based on his race or national origin when Defendant failed to promote him to the position of Supervisor, Maintenance Operations.  A discrimination claim of this nature is considered under the burden-shifting framework outlined in *McDonnell Douglas Corporation v. Green*, 411U.S. 792, 802-04 (1973).  This approach requires that

> the parties dance an adversarial three-step, in which: (1) the plaintiff proves his *prima facie* case by a preponderance of the evidence; (2) the defendant rebuts the presumption of intentional discrimination arising from the *prima facie* case by articulating legitimate, non-discriminatory reasons for the challenged action; and (3) the plaintiff counters by offering evidence that the legitimate, non-discriminatory reasons are really a pretext for discrimination.

*Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 337 (5th Cir. 1999).  Additionally, the Fifth Circuit has announced a modified approach that incorporates a mixed-motive analysis in the final stage of burden-shifting. *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  However, the mixed-motive analysis only applies to situations where there may be both legitimate and illegitimate motivations for the employment action. *See Keenan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).  Here, because Plaintiff has pursued his claim under the pretext approach, the Court will not apply the mixed-motive analysis. *Id.* (affirming district court's refusal to apply mixed-motive when facts did not warrant the analysis).

In order to survive summary judgment, Plaintiff must first establish a *prima facie* case of discrimination.  He must prove: (1) he was not promoted, (2) he was qualified for the position he sought, (3) he was within the protected class at the time of the failure to promote, and (4) either the position he sought was filled by someone outside the protected class or he was otherwise not promoted because of his race or national origin.  *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179 (5th Cir. 1999) (stating the standard for a Title VII sex discrimination case).  Here, Plaintiff was not promoted; was qualified, as evidenced by his selection by the Review Committee's to interview with Bax; he was black and Jamaican; and the positions were filled by two people who were neither black or Jamaican.  Therefore, Plaintiff has established a *prima facie* case of discrimination.

Defendant does not dispute Plaintiff has established his *prima facie* case.  Rather, Defendant offers a legitimate, nondiscriminatory reason for not promoting Plaintiff.  The affidavit of Cecil Bax provides the explanation that DeCamp and Nieves were promoted over Plaintiff because they were more qualified.  Bax cites a number of specific reasons, including Plaintiff's lack of knowledge of certain processes and computer systems, as well as complaints about Plaintiff's management style during his term as Acting Supervisor.  This explanation is sufficient to rebut the *prima facie* case set out by Plaintiff, and shifts the burden back to Plaintiff to create a material fact issue.

Plaintiff must then provide evidence that the reason given by Defendant is a pretext for discrimination.  To defeat summary judgment, Plaintiff must show that he was "clearly better qualified" than the person selected.  *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993).  The disparity in qualifications must be so significant that no reasonable, impartial person could have

promoted the person selected over Plaintiff.  *Celestine v. Petroleos de Venezuela, SA*, 266 F.3d 343, 357 (5th Cir. 2001).  Plaintiff's conclusory statements that he was better qualified and had knowledge of computer systems is not sufficient to overcome Defendant's proffered reasons for not promoting Plaintiff.  *See* Dkt. #34.  Plaintiff's resume does not clearly illustrate that Plaintiff has superior qualifications for the positions. *See id.*, Ex. D.  Plaintiff's only factual support for his claim that he is better qualified is that he had seniority over the two candidates who were ultimately promoted.

However, seniority alone does not establish better qualifications. In fact, the definition of the "Best Meets" Criterion used by Defendant in determining potential success in a particular position does not include seniority as one of its factors.  *See* Dkt. #34, Ex. G.  Rather, the Criterion looks to the knowledge, skills and abilities of the applicant, and Bax's affidavit specifically points to Plaintiff's deficiencies in these categories when he made his decision. Plaintiff provides no specific evidence to overcome Defendant's explanation that DeCamp and Nieves were selected for the supervisor positions because they were more qualified than Plaintiff.

Plaintiff has offered only conclusory statements in an attempt to overcome Defendant's legitimate, nondiscriminatory reasons for not promoting Plaintiff.  Without showing either explicit discriminatory motive or that Plaintiff was clearly better qualified than the other candidates, Plaintiff has failed to meet his burden of raising a genuine issue of material fact on this claim. Therefore, summary judgment is appropriate on the Plaintiff's failure to promote claim.

**III.    Retaliation**

Finally, Defendant seeks summary judgment on Plaintiff's retaliation claim.  A retaliation

claim under Title VII is also analyzed under the *McDonnell Douglas* framework.  In order to establish a *prima facie* case of retaliation, the plaintiff must show: "(1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."  *Ackel v. National Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).  Here, the protected activity was Plaintiff's filing EEOC complaints in the past.  As stated above, Defendant's failure to promote Plaintiff constitutes an adverse employment action.  Plaintiff has shown evidence that his supervisors were aware of his EEOC complaints. This includes Bax and Cashaw, who were responsible for filling this vacancy.  This evidence is sufficient to show a "causal link" could have existed.  *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (holding that supervisor's knowledge of complaints was sufficient to establish the "causal link" necessary for a *prima facie* case).  Therefore, Plaintiff has established a *prima facie* case of retaliation.

The burden of production then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for not promoting Plaintiff.  *See id.*  Defendant submitted the affidavit of Cecil Bax, explaining that DeCamp and Nieves were promoted over Plaintiff because they were more qualified.  Bax cites a number of specific reasons, including Defendant's lack of knowledge of certain processes and computer systems, as well as complaints about Plaintiff's management style during his term as Acting Supervisor.  Therefore, Defendant has satisfied its burden of setting forth a nondiscriminatory reason for not promoting Plaintiff.

The burden then shifts back to Plaintiff to put forth evidence that the nondiscriminatory reason offered in Bax's affidavit was merely a pretext for retaliation.  *See id.* at 685.  The burden on Plaintiff at this stage is more stringent than the initial burden to establish a *prima facie* case.

13

*Id.* He must show "a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment." *Id.* (citation omitted). Evidence is substantial if it is of "such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions." *Sherrod v. American Airlines, Inc.*, 132 F.3d at 1122 (5th Cir. 1998). In an affidavit signed by Plaintiff on August 9, 2002, Plaintiff states, "Mr. Bax told me at my interview that [Alison Cashaw] would never promote me because of my EEO[C] complaints and writing to her boss." *See* Dkt.. #34, Ex. A. Plaintiff points to this statement as evidence that the reasons given for not promoting him in Bax's affidavit are pretextual.

Defendant has not offered any evidence denying or contesting this statement. Assuming this statement is true, a reasonable fact-finder might find that retaliation for Plaintiff's EEOC complaints was the true motivation for not promoting Plaintiff. Therefore, a genuine issue of material fact exists and summary judgment is not proper on the Plaintiff's retaliation claim.

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

It is so ORDERED.

Signed at Houston, Texas on June 13, 2006.

_____
Gray H. Miller
United States District Judge

14